[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 06-15104
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 14, 2007
THOMAS K. KAHN
CLERK

D.C. Docket No. 04-00014-CV-MHS-1

SHIRLIE D. GREEN,

Plaintiff-Appellee,

versus

SHERIFF JACQUELYN H. BARRETT,
individually and in her official capacity,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(March 14, 2007)**

Before TJOFLAT, HULL and COX, Circuit Judges.

PER CURIAM:

In this appeal, we consider whether an employer is entitled to qualified

immunity for firing a public employee as a result of testimony the employee gave

pursuant to her official duties. We reverse the district court's denial of qualified immunity to the employer.

## I. FACTS AND PROCEDURAL HISTORY

On March 26, 2003, Shirlie D. Green, then Chief Jailer at the Fulton County Jail, testified at an emergency hearing in Fulton County Superior Court. The hearing had been called at the request of Fulton County Sheriff Jacquelyn Barrett to consider whether Jamil Abdullah Al-Amin, convicted murderer of a Fulton County deputy sheriff, should be transferred from the Fulton County Jail to a maximum security state prison. A week earlier, Al-Amin had attempted to escape from the Fulton County Jail. Before he was apprehended, security cameras showed Al-Amin opening his jail cell and moving freely about the jail.

Green testified at the hearing that "many of the cell door locks were either broken or could be easily jammed by prisoners, including locks in the area of the jail used to house high-security prisoners such as Al-Amin," and that "prisoners regularly let themselves out of the cells at night." (R.1-12 ¶¶ 25, 26.) Green also testified that she thought the jail was "unsafe . . . insofar as housing inmates like Al-Amin [was] concerned." (R.1-12 ¶ 28.)

The next day, Barrett fired Green. Green's termination letter gave no reason for the firing, but Green alleges that Barrett told Green she was being fired because

of her testimony. (R.1-12 ¶ 33.) In a story published in the Atlanta Journal-Constitution the day after the firing, Barrett is quoted as saying, "I was so concerned about that testimony that the chief gave that she was terminated today." (R.1-12 ¶ 35.)

Green sued Barrett, individually and in her official capacity, and Fulton County, pursuant to 42 U.S.C. § 1983 and Article I, Section I, Paragraph V of the Georgia Constitution. The amended complaint alleges that Barrett violated Green's free speech rights as protected by the First Amendment to the United States Constitution and the above cited provision of the Georgia Constitution.

Fulton County and Barrett moved for summary judgment. On July 26, 2005, the district court granted Fulton County's motion. In the same order, the district court denied Barrett's motion, finding that she was not entitled to qualified immunity or official immunity. Barrett filed a notice of appeal in this court, but her appeal was dismissed for failure to prosecute.

When the case proceeded in the district court, Barrett renewed her motion for summary judgment on qualified immunity grounds in light of the newly published opinion in *Garcetti v. Ceballos*, ___ U.S. __, 126 S. Ct. 1951 (2006). On September 6, 2006, the district court denied Barrett's renewed motion, finding that *Garcetti* did

3

not change its conclusion that Barrett was not entitled to qualified immunity. Barrett appeals the September 6, 2006 order.

## II. ISSUE ON APPEAL & STANDARD OF REVIEW

In this interlocutory appeal, we consider whether the district court erred in denying Barrett qualified immunity on Green's section 1983 claim. Green argues that this court does not have jurisdiction to consider the appeal because the parties dispute questions of fact. However, when considering the merits of the appeal, we may "accept as true all facts the district court assumed when it denied summary judgment on qualified immunity grounds." *See Badia v. City of Miami*, 133 F.3d 1443, 1445 (11th Cir. 1998) (citations omitted). The district court found that Green's testimony "played a substantial role in [Barrett's] decision to fire" Green. (R.3-97 at 14.) Accepting that fact, what remains is a purely legal question – whether Barrett is entitled to qualified immunity for firing Green because of her testimony – that we have jurisdiction to consider de novo. *See Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S. Ct. 2806, 2817 (1985) ("[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment."); *Cagle v. Sutherland*, 334 F.3d 980, 985 (11th Cir. 2003) ("A

4

defendant's entitlement to qualified immunity is a question of law to be reviewed *de novo*.").

Though Barrett's appellate brief raises the question, we do not consider whether the district court erred in denying her official immunity on Green's state law claims. That question is not properly part of this appeal. It was not addressed in the district court's September 6, 2006 order, and appeal of the July 28, 2005 order is untimely.

Neither do we address the question of whether Green's claims against Barrett, in her official capacity, are properly a part of the lawsuit. Barrett's Notice of Appeal states that she appeals the district court's order in both her official and individual capacities. The district court held that this a suit against Barrett in her official capacity is a suit against the State of Georgia. Because Barrett makes no arguments on behalf of the state in her briefs and the scope of our review is limited to the qualified immunity question, we do not discuss this issue.

## III. DISCUSSION

We apply a two-step analysis to determine when an official acting within her discretionary authority[1] is eligible for qualified immunity. *Saucier v. Katz*, 533 U.S.

---

[1]The parties do not dispute that Barrett was acting within her discretionary authority when she fired Green.

194, 201, 121 S. Ct. 2151, 2156 (2001). First, we ask whether the facts, taken in the light most favorable to the party asserting the injury, show that the conduct violated a constitutional right. *Id.* Second, if a constitutional right was violated under the plaintiff's version of the facts, we must then determine "whether the right was clearly established." *Id.*

To determine whether Barrett violated Green's First Amendment right to free speech, we first determine whether Green's testimony constitutes speech protected by the First Amendment. To be protected speech, Green's testimony must be "fairly characterized as constituting speech on a matter of public concern." *Connick v. Myers*, 461 U.S. 138, 146, 103 S. Ct. 1684, 1690 (1983). The district court found that Green's testimony was speech on a matter of public concern because it pertained to matters of public safety. (R.3-97 at 12.) We disagree.

Our precedent clearly holds that "[t]he fact that [the communicated] information may be of general interest to the public . . . does not alone make it of 'public concern' for First Amendment purposes." *Morris v. Crow*, 142 F.3d 1379, 1381 (11th Cir. 1998) (citing *Connick*, 461 U.S. at 148 n.8, 103 S. Ct. at 1691 n.8). The key consideration is the purpose of the communication. *Id.* at 1381, 1382. If a public employee plaintiff speaks as a citizen with the purpose of raising a matter of public concern, then the speech is generally protected, subject to some narrow

6

exceptions. *Garcetti*, 26 S. Ct. at 1958; *Morris*, 142 F.3d at 1382. However, if a plaintiff speaks as part of her duties as a public employee, the speech is not protected by the First Amendment. *Garcetti*, 126 S. Ct. at 1959-1960; *Morris*, 142 F.3d at 1382. This distinction is not affected by the fact that the plaintiff made the statements in testimony. *Morris*, 142 F.3d at 1383 ("The mere fact that Morris's statements were made in the context of a civil deposition cannot transform them into constitutionally protected speech."); *see also Garcetti*, 126 S. Ct. at 1960 (holding broadly "that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.").

Green does not dispute that she testified at the hearing because she was the Chief Jailer, the public employee responsible for the conditions at the jail. Nor does she contend that the purpose of her statements was to communicate to the public her concerns about the general safety of the Fulton County Jail or the necessity for change in the conditions of the jail. Rather, her statements were made in a hearing conducted for the specific purpose of assessing whether the jail was a safe place for inmate Al-Amin to be housed.

On these facts, Green's testimony was given pursuant to her official duties as Chief Jailer. Therefore, it is not protected by the United States Constitution.

Barrett's firing of Green did not violate Green's First Amendment right to free speech.

Additionally, even assuming Green's testimony were considered speech on a matter of public concern, this was not clearly established by Supreme Court or Eleventh Circuit precedent at the time Barrett fired Green. Indeed, while there is Eleventh Circuit precedent supporting the proposition that a public employee may have a First Amendment interest in testimonial communications made in the context of investigative proceedings, *see Martinez v. City of Opa-Locka*, 971 F.2d 708 (11th Cir. 1992), there is also (as is discussed above) long-standing circuit precedent that not all communications on matters of general interest to the public enjoy First Amendment protection, even if those communications are made in the course of subpoenaed testimony. *See Morris*, 142 F.3d 1379.

When Green gave her testimony, she was not, as a matter of law, exercising a clearly established First Amendment right. Therefore, Barrett, in her individual capacity, is entitled to qualified immunity on Green's section 1983 claim.

## IV. CONCLUSION

For the foregoing reasons, the district court's order denying Barrett qualified immunity individually is REVERSED, and the action is REMANDED to the district

8

court with instruction to enter judgment in favor of Barrett individually on Green's section 1983 claim.

**REVERSED AND REMANDED.**