## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-40121

United States Court of Appeals
Fifth Circuit

**FILED**
January 15, 2020

Lyle W. Cayce
Clerk

KENNETH RATLIFF,

      Plaintiff - Appellant

v.

ARANSAS COUNTY, TEXAS; COLBY SCUDDER, Individually; RAYMOND
SHEFFIELD, Individually,

      Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, SMITH, and COSTA, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Kenneth Ratliff was shot five times when he refused to drop his weapon during an armed confrontation with two sheriff's deputies in Aransas County, Texas. He survived and was later acquitted of criminal assault. He proceeded to sue both deputies, as well as the county, under 42 U.S.C. § 1983, alleging that the deputies used unreasonable and excessive force in violation of the Fourth Amendment. The district court dismissed Ratliff's "official custom" and "failure to train" claims against Aransas County, finding that Ratliff's pleadings failed plausibly to establish municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Later, the court awarded summary

No. 19-40121

judgment to the deputies, holding that Ratliff had failed to rebut their qualified immunity defense. Ratliff appeals; we affirm.

I.

At approximately 3:00 a.m., on March 24, 2015, Aransas County sheriff's deputies were dispatched to a residence in Rockport, Texas, where Kenneth Ratliff was living with Tanya Vannatter, his fiancée. The deputies, Colby Scudder and Raymond Sheffield, had been requested by Vannatter, who reported in a 911 call that Ratliff had beaten her earlier in the evening.

When the deputies arrived, Vannatter explained that Ratliff had been drinking "all day and all night," and that, when she caught him sending text messages to another woman, he went "ballistic." More specifically, Vannatter said that Ratliff had thrown her to the ground, punched her "everywhere," and choked her with such force that she thought she would die. She was reluctant to press charges. But she did request that the deputies ask Ratliff to leave home voluntarily.

As Vannatter and the deputies walked toward Ratliff's front porch, Ratliff began shouting, "Get the f*** off my property." Ratliff was holding a loaded, semi-automatic pistol, but he had not chambered a round. The parties dispute whether the pistol was ever pointed at the deputies, but it is undisputed that the deputies issued five orders to disarm moments before the shooting. Ratliff responded, "shoot me . . . shoot me" and "hey, you're on my property." Deputy Scudder fired nine shots, and Ratliff sustained five gunshot wounds. The whole encounter lasted about twenty-five seconds. The deputies called an ambulance immediately, and paramedics arrived in time to tend to Ratliff, who survived.

II.

Texas authorities charged Ratliff with aggravated assault on a police officer, but he was later acquitted by a jury. Ratliff then sued Deputy Scudder,

No. 19-40121

Deputy Sheffield, and Aransas County under 42 U.S.C. § 1983, alleging that Deputy Scudder violated clearly established law by using deadly force, that Deputy Sheffield violated clearly established law by failing to prevent deadly force, and that Aransas County should be held responsible because the deputies' actions reflect the county's "customary practice[,] . . . policy or procedure."[1]   The district court quickly dismissed Ratliff's claim against the county, however, holding that Ratliff had failed to plead sufficiently specific facts in support of his "official custom" and "failure to train" theories of *Monell* liability.

Then, on a motion for summary judgment, the district court also disposed of Ratliff's excessive force claims against the deputies.  The district court found that Deputy's Scudder's use of deadly force was not objectively unreasonable under the circumstances and that Ratliff could not therefore meet his burden to rebut the defense of qualified immunity.  That finding was also fatal to Ratliff's claim against Deputy Sheffield.  Ratliff's entire suit was dismissed with prejudice.  This appeal followed.

III.

Ratliff raises three issues on appeal.  He argues that the district court erred: (1) by granting defendants' motion to dismiss the *Monell* claim against Aransas County, (2) by excluding testimony given by Ratliff in his earlier criminal trial from the summary judgment record in this civil action, and (3) by awarding summary judgment to the deputies on qualified immunity grounds.  We will address each issue in turn.

---

[1] Ratliff's complaint also contained a "malicious prosecution" claim that the district court dismissed for failure to "tie [the allegedly malicious prosecution] to rights locatable in constitutional text."  *Cf. Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003) (en banc). Ratliff does not challenge the dismissal of that claim on appeal.

No. 19-40121

A.

We first consider Ratliff's challenge to the dismissal of his *Monell* claim. Ratliff argues that his pleadings satisfy both the familiar pleading standard established by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and a lower-than-normal pleading standard that, according to Ratliff, applies in the *Monell* context under *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993). He can prevail on neither count.

Initially, we note that the ordinary *Twombly* pleading standard applies. It is, of course, true that *Leatherman*, a pre-*Twombly* case, held that courts must not apply a "heightened" pleading standard to *Monell* claims. *See id.* at 168. Although Ratliff argues otherwise, however, *Leatherman* did not require courts to accept "generic or boilerplate" pleadings in this case or in any other context. Indeed, our precedents make clear that the *Twombly* standard applies to municipal liability claims. *See Peña v. City of Rio Grande City*, 879 F.3d 613, 621–22 (5th Cir. 2018); *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 866 n.10 (5th Cir. 2012) (en banc). "To survive a motion to dismiss," Ratliff's *Monell* pleadings "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

Reviewing *de novo*, we find no error in the district court's conclusion that Ratliff has failed to produce sufficient pleadings. To state a *Monell* claim against Aransas County, Ratliff was required to plead facts that plausibly establish: "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). The district court held that Ratliff's complaint fails to establish an official custom or policy of excessive force because "[t]he only facts [that Ratliff] allege[d] with any specificity . . . relate to his shooting." This assessment is correct.

4

No. 19-40121

"[P]lausibly to plead a practice 'so persistent and widespread as to practically have the force of law,' [Ratliff] must do more than describe the incident that gave rise to his injury." *Peña*, 879 F.3d at 622.  Ratliff's complaint states that "the assault, beating, and severe injury to citizens, with little or no justification, is a persistent, widespread practice of County employees— namely officers/deputies—that, although not authorized by officially adopted policy, is so common and well settled as to constitute a custom that fairly represents official county policy."  But this allegation does not contain any specific facts.  Instead, the complaint's only specific facts appear in the section laying out the events that gave rise to this action.  Thus, Ratliff's complaint clearly does not satisfy *Twombly* or *Iqbal* with respect to the allegation that excessive force is an Aransas County "custom."

In addition to this theory of widespread and customary police brutality, Ratliff also alleged that "Defendant County is liable for [the] inadequate training of police officers."  To prevail on a failure-to-train theory, Ratliff must plead facts plausibly establishing "(1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question."  *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010).

Ratliff has failed to carry this burden.  Although the district court focused on the first two failure-to-train elements, "we may affirm a district court's [Federal Rule of Civil Procedure] 12(b)(6) dismissal on any grounds raised below and supported by the record."  *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).  Before the district court, the defendants argued that Ratliff's failure-to-train pleadings were insufficient with respect to the element of causation.  It is clear that this argument is meritorious.  Ratliff's complaint states in conclusory fashion that a "deficiency in training actually caused

No. 19-40121

Defendants Scudder and Sheffield to violate Plaintiff's constitutional rights." But, absent specific allegations supporting a plausible causation inference, this legal conclusion does not state a claim for relief and warrants dismissal under Rule 12(b)(6).

In short, we hold that the district court did not err in dismissing Ratliff's claim against Aransas County and, consequently, affirm its judgment dismissing the county from this case.

B.

We next examine Ratliff's argument that the district court erred by excluding testimony that Ratliff gave in his earlier criminal trial. He offered the testimony because of a failing memory and to rebut the deputies' qualified immunity defense in this § 1983 case. This previous testimony was attached, as part of a forty-page exhibit, to Ratliff's response to the defendants' summary judgment motion. The exhibit also included the testimony of other trial witnesses, including Vannatter and Deputy Scudder. The defendants objected only to Ratliff's testimony, arguing that such testimony was inadmissible hearsay to which no exception applied. The district court sustained the objection in a footnote but did not provide analysis or reasoning.

On appeal, Ratliff does not explain why any of the excluded testimony would have been relevant to the issues raised at summary judgment. The testimony could have evidenced only two plausibly-relevant facts: (1) that Ratliff did not know who was approaching his residence when he yelled, "Get the f*** off my property," and (2) that Ratliff did not "raise [his] gun and point it" at anyone, instead holding it "in [his] right hand . . . down [at his] side" for the duration of his encounter with the deputies.

"[A]n appeal of a summary judgment presenting evidentiary issues raises two levels of inquiry." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 916 (5th Cir. 1992) (quotation omitted). First, we review the district court's

6

evidentiary rulings for abuse of discretion. *Id.* Then, once the summary judgment record is "define[d]," we review *de novo* whether summary judgment was appropriately granted. *Id.* Indeed, here, we cannot determine whether the district court's summary judgment order was erroneous until we have "defined" the summary judgment record, *i.e.*, until we have ruled on Ratliff's challenge to the exclusion of his earlier criminal testimony. We thus address Ratliff's evidentiary arguments first, before turning to the merits of the district court's summary judgment order.

We first entertain the defendants' argument that any error in excluding Ratliff's prior testimony was harmless. If it were, we may assume that the exclusion was erroneous and affirm nevertheless. *Saratoga Res., Inc. v. Lexington Ins. Co.*, 642 F. App'x 359, 363 n.10 (5th Cir. 2016) (citing *Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*, 174 F.3d 653 (5th Cir. 1999)). An error is harmless unless it affects "substantial rights." Fed. R. Civ. P. 61. Ratliff, as the "party asserting . . . error," bears the burden of proving such prejudice. *Ball v. LeBlanc*, 792 F.3d 584, 591 (5th Cir. 2015).

But no prejudice has been shown. As we have already said, Ratliff's appellate brief does not even explain why the excluded testimony was relevant, let alone demonstrate that its exclusion affected his "substantial rights." Fed. R. Civ. P. 61. On the contrary, none of the points, which we may assume from the excluded testimony, was relevant to the district court's decision to enter summary judgment. Ratliff's testimony that he did not know who was approaching his home on the night of the shooting was irrelevant because, in the context of qualified immunity, the district court assessed the "reasonableness of [Deputy Scudder's] use of force . . . from the perspective of a reasonable officer on the scene," not from Ratliff's perspective. Similarly, "the direction of [Ratliff's] gun" was immaterial to the district court's analysis: the district court reasoned that, irrespective of the gun's direction, Deputy

No. 19-40121

Scudder's force was justified because "other facts [had] establish[ed] that the suspect was a threat to the officer[s]," which would include the fact that Ratliff had been accused of a violent crime, the fact that Ratliff was drunk and confrontational, and the fact that Ratliff had ignored five orders to drop his weapon.[2]

To sum up, we find that, even if the district court erred by excluding testimony from Ratliff's criminal trial, such error was harmless and the testimony's exclusion thus furnishes no basis for reversal.

C.

Finally, we consider the substantive merits of Ratliff's appeal: whether the district court erred by accepting the deputies' qualified immunity defense and awarding them summary judgment. "We review a grant of summary judgment *de novo*, viewing all evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." *Gonzalez v. Huerta*, 826 F.3d 854, 856 (5th Cir. 2016) (quotation omitted).

Typically, to prevail on a motion for summary judgment, the moving party must show "that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). However, "[a] good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016) (quotation omitted).

So, here, Ratliff was required to adduce summary judgment evidence indicating that the deputies' actions "violate[d] clearly established . . . constitutional rights of which a reasonable person would have known."

---

[2] As we shall explain later, our cases support the district court's conclusion that, because Ratliff ignored five orders to disarm and engaged in threatening behavior, Deputy Scudder's force was not unreasonable even assuming that Ratliff never raised his gun. *See Garza v. Briones*, 943 F.3d 740, 747 (5th Cir. 2019).

*Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quotation omitted).  To determine whether he has done so, we will assume genuinely disputed facts in his favor and engage in a two-pronged inquiry.  "The first [prong] asks whether the facts . . . show [that] the officer's conduct violated a [constitutional or statutory] right."  *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014) (brackets and ellipsis added).   The second "asks whether the right in question was 'clearly established' at the time of the violation."  *Id.* at 656.  For a right to be clearly established, "its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quotation omitted).

The district court focused exclusively on the first prong of the qualified immunity analysis, concluding that the right at issue here, Ratliff's Fourth Amendment right to be free from unreasonable and excessive force, was not violated when Deputy Scudder opened fire.  *See Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019) ("If the plaintiff fails at either step, [a] federal court can grant qualified immunity by addressing either step or both of them.").  To establish a Fourth Amendment violation in this context, Ratliff must establish "(1) [an] injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007).  Only the second and third of these elements are at issue.  The question is whether Deputy Scudder's resort to deadly force was unreasonable and excessive when the facts are viewed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Our recent opinion in *Garza v. Briones* speaks to this question.  Prior to *Garza*, our cases had clearly established that deadly force is not unreasonable when an armed suspect has ignored multiple orders to disarm and has either

pointed his weapon at a person or used the weapon in such a manner as to make a threatening gesture. *See*, *e.g.*, *Ramirez v. Knoulton*, 542 F.3d 124, 127–31 (5th Cir. 2008) (officer's use of deadly force was not a Fourth Amendment violation where an armed suspect failed to comply with an order to drop his weapon and then "brought his hands together in front of his waist" as if "in preparation to aim [his gun] at the officers"); *see also Mace v. City of Palestine*, 333 F.3d 621, 624–25 (5th Cir. 2003) (deadly force was not objectively unreasonable when a suspect had "brandish[ed] an eighteen to twenty inch sword" and failed to "respond to commands to drop his sword or to stop moving toward [police] officers"); *Ballard v. Burton*, 444 F.3d 391, 402–03 (5th Cir. 2006) (deadly force was not unreasonable when a suspect had "refused to put down his rifle, discharged the rifle into the air several times while near the officers, and pointed it in the general direction of [the] officers," even though the suspect was not pointing his gun at anyone when he was shot).

*Garza* further adds to this line of cases. In *Garza*, police officers received reports that a man was "sitting alone in front of [a] truck stop's bar playing with a pistol and holding what appeared to be a wine bottle and a plastic bag." 943 F.3d at 743. When the officers arrived, they discovered a suspect holding a gun, later revealed to be a BB gun. *Id.* One of the officers ordered the suspect to drop the weapon, but he "did not do so and instead continued to move the firearm around in different directions while making facial gestures." *Id.* "At that time, [the suspect] did not have his finger on the trigger and was not pointing the gun at anyone." *Id.* Nevertheless, the suspect was later shot and killed. *Id.* The administrator of the suspect's estate sued the officers under § 1983, alleging that the officers' resort to deadly force was unreasonable, excessive, and a violation of the Fourth Amendment. *Id.* at 744.

We rejected those allegations. We held that, when "confronting an unpredictable man armed with a dangerous weapon," law enforcement officers

No. 19-40121

"may use deadly force . . . without violating the Fourth Amendment." *Id.* at 745. The plaintiff in *Garza* argued, as Ratliff argues now, that "a reasonable jury could find that [the suspect] never pointed his gun at the officers." *Id.* at 746. In support of this argument, the plaintiff relied on an affidavit from one of the officer-defendants, which stated that the suspect "did not at any time point the gun [at the] cops." *Id.* at 747. Although we found that video evidence had conclusively contradicted the affiant's statement, we explained that this fact was not essential to the outcome and further held that a "reasonable officer in any of the defendants' shoes would have believed that [the suspect] posed a serious threat regardless of the direction [of his] gun." *Id.*

Thus, in *Garza*, we found that it is not unreasonable for law enforcement officers to use deadly force against an armed suspect, irrespective of the pointed direction of that suspect's weapon, when the suspect has ignored orders to drop the weapon and has displayed erratic or aggressive behavior indicating that he may pose an imminent threat. We can concede that, here, unlike in *Garza*, the video evidence is inconclusive with respect to the direction of Ratliff's gun. Moreover, we are willing to accept that the gun's direction is genuinely disputed. But we cannot agree that the pointed direction of Ratliff's gun is material in the context of these facts. Once Ratliff had ignored repeated warnings to drop his weapon, the deputies here, like the officers in *Garza*, had ample reason to fear for their safety.[3]

---

[3] The deputies had been told that Ratliff was drunk and that he had nearly killed a person earlier in the night. When they arrived on the scene, Ratliff dared the deputies to shoot him, cursed at the deputies to get off his property, and ignored the deputies' lawful commands to disarm. Although we accept that it is genuinely disputed whether Ratliff knew that he was dealing with law enforcement, we again note that facts about *Ratliff's* knowledge are beside the point. We examine the reasonableness of Deputy Scudder's force "from the perspective of a reasonable officer on the scene." *Graham*, 490 U.S. at 396. There is no genuine dispute about whether Deputy Scudder could reasonably have believed that Ratliff knew he was confronting the police. After all, the deputies were in uniform and, although it was dark, the area was illuminated by lights from Deputy Sheffield's squad car.

11

No. 19-40121

Thus, we concur in the district court's conclusion that the deputies were entitled to qualified immunity. Ratliff simply has not met his burden to establish a Fourth Amendment violation in the form of unreasonable and excessive force, much less a violation that every reasonable officer in Deputy Scudder's position would appreciate. *See Hope*, 536 U.S. at 739. The district court was correct to enter summary judgment in favor of both deputies.[4]

## IV.

In sum, we hold that the district court committed no reversible error in its dismissal of Ratliff's *Monell* claim against Aransas County, nor in its decision to exclude testimony given in Ratliff's criminal trial, nor in its decision to award summary judgment to both deputies under the doctrine of qualified immunity. The district court's judgment is therefore, in all respects,

AFFIRMED.

---

[4] In his initial brief on appeal, Ratliff does not challenge the district court's dismissal of the claim against Deputy Sheffield, other than to generally assert that summary judgment should not have been awarded to "Appellees." As such, he has waived on appeal any argument that the district court improperly dismissed this claim. *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 702 n.6 (5th Cir. 2014) (issues not raised and argued in an appellant's initial brief are abandoned).