# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 14, 2022

Lyle W. Cayce
Clerk

No. 21-20329

Constable Herschel Smith,

*Plaintiff—Appellee*,

*versus*

Constable Ted Heap,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
No. 4:20-CV-3572

Before Smith, Costa, and Wilson, *Circuit Judges*.
Jerry E. Smith, *Circuit Judge*:

Ted Heap is an elected constable in Harris County, Texas. Herschel Smith is his counterpart in adjoining Waller County. After a 911 caller reported that Smith had aimed a gun at him on a local tollway in Harris County, Heap's deputies stopped and questioned Smith, then released him minutes later.

Smith sued Heap, who asserted qualified and statutory immunities. The stop was lawful, Heap wasn't even there, and state law shields him from the tort claims. But the district court denied Heap's motion to dismiss. We

No. 21-20329

reverse, dismiss, and render judgment for Heap.

## I.

In summer 2020, Constable Smith was returning to Waller County from an extra job, driving in Harris County in a county-owned vehicle that displayed "Exempt" license plates and featured standard red and blue emergency lights. The vehicle was otherwise unmarked. While on a tollway, Smith observed a car exceeding the speed limit, so he flashed his police lights to tell the driver to slow down.

A motorist then called 911. After identifying Smith's vehicle (a black Chevy Tahoe) and its license plate number, the caller said that the driver had flashed "police lights" at him and, after the caller slowed down, "pulled up next to me and pointed a gun at me and was yelling stuff at me" before driving off.

After learning of the call, Harris County deputy constables in marked police vehicles began searching for Smith's vehicle. When they found it, they activated their police lights and sirens and directed Smith to stop. Because the 911 caller had said that Smith had pointed a gun at him, the deputies planned to employ a "felony stop" procedure: After the cars rolled to a stop, the deputies would approach Smith's car, guns drawn, so they could react if Smith emerged and started shooting. And they would cuff Smith promptly so he could not retrieve a weapon while they investigated.

The stop was textbook. The cars stopped. The officers approached, guns drawn and ready, and asked Smith to show his hands. Smith activated his police lights and, about a minute later, stuck his hands out the window. He then exited the Tahoe with his hands up, out, and empty. A deputy led Smith behind a police car and cuffed him.

The deputies asked Smith where his service weapon was. Smith replied that it was in his car. The deputies asked him to sit in the back of a

police car.  Smith refused and demanded that the deputies call Heap, the constable for that Harris County precinct.  The deputies did not do that.

Smith also asked why he was pulled over, and one of the deputies told him what the 911 caller had said.  Smith admitted to flashing his lights at a motorist but denied pointing his gun.  After one minute forty-seven seconds, the deputies removed the handcuffs.  The deputies and Smith spoke for a few more minutes; Smith then left the scene.

The next day, Smith, who is black, held a press conference at which he accused the deputies, Heap, and the 911 caller of racial discrimination.  He protested, as does his complaint, that the deputies stopped him even though he is an elected constable who was driving a government vehicle.  He demanded that Heap apologize for his deputies' conducting the stop.

Smith's presser prompted media inquiries, so Heap held his own. Defending his deputies, Heap pointed out that the 911 caller never mentioned Smith's race, that two of the deputies who stopped Smith were black, and that aiming a gun at other motorists would plainly warrant a felony stop.  He then answered Smith's complaint that Heap did not call him to apologize on behalf of his deputies:

> REPORTER:  So we were talking to [Smith] and he says you haven't—he hasn't had a call from you.  Have you had plans to talk to him, like, call—talk about this issue?
>
> HEAP:  Well as much as I would like to, **my response would be, 'Why would I call him?  He's a suspect in a criminal case.'  If I was to call a suspect in a criminal case, could you imagine how that is going to play?**  The fact that two elected officials are collaborating on possible criminal charges?  I mean, we reviewed this this morning, the district attorney said this needs to probably be referred [to the Texas Rangers], we referred it.  At that point, then it's not appropriate for me to make a phone call to a suspect in a criminal case.  Regardless if

they're an elected official or not—I don't think the public or anybody else wants to believe that law enforcement should be above the law.

Smith then sued Heap, the deputies, and Harris County in federal court. His amended complaint brings three counts. The first, against all defendants, is a claim under 42 U.S.C. § 1983 for excessive force, illegal search and seizure, and supervisory liability for the same. The remaining counts are state-law claims: The second, also against all defendants, is intentional infliction of emotional distress ("IIED"). The third, against Heap only, is defamation, arising from Heap's statement at the presser that Smith was a "suspect" in a "criminal case." Smith sues Heap in his individual and official capacities.

Heap soon moved to dismiss the individual-capacity claims against him. He asserted qualified immunity ("QI") from the federal claims, which were inadequately pleaded. Heap stressed that he was at home when the stop took place. And even if he had been present or had directed the stop, the stop was completely lawful: The deputies had reasonable suspicion to stop Smith to investigate the 911 caller's disturbing report. Plus, the deputies used no force at all—and certainly not *excessive* force—during Smith's brief detention.

The district court denied Heap's motion. This is all it said about the merits and Heap's defenses:

> The Court finds that these allegations, taken as true, are sufficient to maintain the suit against the defendant individually. In short, the fact that the defendant is a Constable does not exempt him from a suit for slander as an individual, nor does his status automatically exempt him from acts done under "color of the law," where it is shown that he was involved in or endorsed illegal conduct. The circumstances are not fully clear, but suggest that the defendant was personally involved in the matter, even though he was not present. In any event, lim-

No. 21-20329

ited discovery concerning the defendant's involvement will serve to clear up the matter as to whether the defendant may be personally liable under [42 U.S.C.] § 1983.

Heap appealed.

## II.

"This court reviews *de novo* a district court's denial of a motion to dismiss on grounds of qualified or absolute immunity." *Terwilliger v. Reyna*, 4 F.4th 270, 279 (5th Cir. 2021). When an official asserts QI, the plaintiff bears the burden to rebut that defense. *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016).

> The standard pleading burden applies:
>
> To withstand a motion to dismiss under Rule 12(b)(6), a complaint must present enough facts to state a plausible claim to relief. A plaintiff need not provide exhaustive detail to avoid dismissal, but the pleaded facts must allow a reasonable inference that the plaintiff should prevail. Facts that only *conceivably* give rise to relief don't suffice. Thus, though we generally take as true what a complaint alleges, we do not credit a complaint's legal conclusions or threadbare recitals of the elements of a cause of action.[1]

The denial of immunity is a collateral order, which this court has jurisdiction to review.[2]

---

[1] *Mandawala v. Ne. Baptist Hosp.*, 16 F.4th 1144, 1150 (5th Cir. 2021) (cleaned up); *see also Terwilliger*, 4 F.4th at 279–80 ("These standards are the same when a motion to dismiss is based on qualified immunity.").

[2] *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (stating that denial of QI is a collateral order); *Cantu v. Rocha*, 77 F.3d 795, 804 (5th Cir. 1996) (same rule for state-law immunities).

No. 21-20329

III.

This court must first decide whether Heap is entitled to QI on the federal claims.  He is.  We then must decide whether Texas law immunizes Heap from Smith's tort claims.  It does, so we reverse and dismiss all individual-capacity claims against Heap.

A.

We turn first to the federal claims.  Although his brief does not challenge the propriety of the initial traffic stop, Smith asserts that the deputies committed an unreasonable seizure and used excessive force to detain him.  Though Heap wasn't present, Smith claims that Heap is responsible for the stop because he either "order[ed] the excessive force used against [Smith]" or ratified that violation by defending his deputies at the press conference.

When a defendant asserts and is entitled to QI, a court has two options:  It can decide that the plaintiff's constitutional claims lack merit, or it can decide that the defendant's conduct did not violate clearly established law.  Which path to choose is committed to our "sound discretion."  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

We choose to address the merits, and there are none.  Smith has not pleaded a constitutional violation—not even close.

1.

Smith first claims that after the stop, the deputies unreasonably seized him, violating the Fourth Amendment.  That claim is meritless.

Smith appears to claim that his seizure was a *de facto* arrest that required probable cause. But Smith was not arrested. *De facto* arrest requires restraint "of the degree which the law associates with formal arrest." *Windham v. Harris Cnty.*, 875 F.3d 229, 240 (5th Cir. 2017) (cleaned up).  Taking a suspect "to police headquarters usually marks the point at which an investi-

gatory stop becomes a *de facto* arrest."[3] And if unjustifiably prolonged, a *Terry* stop "can, due to its duration, transform into the equivalent of an arrest." *United States v. Massi*, 761 F.3d 512, 522 (5th Cir. 2014). For example, *United States v. Zavala*, 541 F.3d 562, 579 (5th Cir. 2008), held that a defendant endured a *de facto* arrest when, after a search of his car turned up nothing, police handcuffed him, stuffed him into a police vehicle, and "transported [him] to different locations" for more than ninety minutes.

Nothing like that happened here. Smith alleges that the deputies aimed guns at him, "activated the sirens and flashers on their vehicles, commanded [him] to exit his vehicle, handcuffed [him], and tried to place [him] into the back of a squad car." But those measures typify our cases dismissing claims of *de facto* arrest. It is "reasonable to detain a suspect at gunpoint, handcuff [him], and place [him] in a police car" during an investigatory stop. *United States v. Thomas*, 997 F.3d 603, 615 (5th Cir. 2021) (citing *United States v. Abdo*, 733 F.3d 562, 565–66 (5th Cir. 2013)), *cert. denied*, 142 S. Ct. 828 (2022). And unlike many of those cases, here the officers detained Smith for mere minutes,[4] releasing him after he denied aiming his gun at another driver.[5]

Because reasonable suspicion supported the investigatory stop, Smith did not adequately plead an unreasonable seizure.

---

[3] *United States v. Martinez*, 808 F.2d 1050, 1055 (5th Cir. 1987) (citing *Hayes v. Florida*, 470 U.S. 811, 815–16 (1985)); *see also Terry v. Ohio*, 392 U.S. 1, 16 (1968) (describing "a trip to the station house and prosecution" as hallmarks of arrest).

[4] *See, e.g.*, *Windham*, 875 F.3d at 241 (ninety-minute traffic stop that ended in release wasn't a *de facto* arrest).

[5] *See Zavala*, 541 F.3d at 579 ("A *Terry* detention must . . . last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges.") (cleaned up).

No. 21-20329

2.

Smith asserts that the deputies deployed excessive force to detain him, violating the Fourth Amendment.  Again, Smith fails to plead a colorable constitutional violation.

To plead a claim of excessive force, the plaintiff "must establish (1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Ratliff v. Aransas Cnty.*, 948 F.3d 281, 287 (5th Cir. 2020) (cleaned up).  We measure the excessiveness and unreasonableness of the force "from the perspective of a reasonable officer on the scene." *Id.* (quotation omitted).

To the first element, Smith claims that he suffered "psychological injuries" from the stop.  But that claim has two problems.

The first is that his complaint doesn't allege it.  Paragraphs 63 through 68 of Smith's amended complaint assert his excessive-force claim; none mentions injury.  Smith later says that the stop "caused . . . severe emotional distress," but that allegation pertains only to his IIED claim.  Smith therefore has not alleged that his injury resulted "directly and only" from the deputies' use of force.  *Ratliff*, 948 F.3d at 287 (quotation omitted).

The second deficiency is that the police used objectively reasonable force.  "[O]bjectively reasonable force will result in *de minimis* injuries only," and *de minimis* injuries cannot sustain an excessive-force claim.  *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017) (quotation omitted).

Such is the case here.  Informed that Smith had pointed his gun at another driver,[6] the officers approached the car with weapons drawn, directed

---

[6] At oral argument, Smith's counsel asserted that the officers "did not believe that Constable Smith pointed a weapon" at the motorist.  Oral Arg. at 18:45–18:50.  Even if that claim had appeared in Smith's complaint, it would not matter.  Reasonable suspicion and

No. 21-20329

Smith to exit the vehicle, and then handcuffed him for under two minutes (causing no physical injury) while they secured the scene. That use of force was reasonable; it's a "routine police procedure" for safely confronting armed suspects like Smith.[7]

Smith replies with a bizarre contradiction. He claims that the deputies committed felony assault by detaining him, a constable, at gunpoint.[8] But Smith's alleged pointing a gun at another motorist was, Smith says, a mere misdemeanor, for which the police could not arrest him.[9]

The first point is irrelevant, the second incorrect. *First*, whether the deputies committed an offense under Texas law does not tell us whether they violated the Fourth Amendment. Smith cites no case holding that the measure of excessive force is whether an officer's conduct would be a felony under state law had the officer lacked lawful authority to make the stop. *Second*, Smith's aiming a gun at someone may, in fact, be a felony in Texas.[10]

---

probable cause are *objective* inquiries; "an officer's subjective intentions have no impact" on either analysis. *United States v. Lopez-Moreno*, 420 F.3d 420, 432 (5th Cir. 2005).

[7] *Dunn v. Denk*, 79 F.3d 401, 403 (5th Cir. 1996) (en banc); *see also Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) ("Other than placing the handcuffs on [the plaintiff] . . . , Officer Rhodes did not touch her . . . . [H]andcuffing too tightly, without more, does not amount to excessive force."); 3 WAYNE R. LAFAVE, SEARCH & SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 5.1(d) n.240 (6th ed.), Westlaw (database updated Dec. 2021) ("Aiming of a weapon at an arrestee/intended arrestee has typically been upheld because of the circumstances.").

[8] *See* TEX. PENAL CODE § 22.01(b)(1) (assault is a third-degree felony when "committed against a person the actor knows is a public servant while the public servant is lawfully discharging an official duty, or in retaliation or on account of an exercise of official power").

[9] *See id.* § 22.05(a) ("A person commits [the] offense [of deadly conduct] if he recklessly engages in conduct that places another in imminent danger of serious bodily injury."); *id.* § 22.05(e) (noting that this crime is a Class A misdemeanor).

[10] Texas law sensibly criminalizes "intentionally or knowingly threaten[ing] another with imminent bodily injury." TEX. PENAL CODE § 22.01(a)(2). That offense is a felony

No. 21-20329

And Smith was only stopped; he was not arrested, as we have explained.

Smith hasn't adequately pleaded any constitutional violation. That dooms Smith's other claims: Absent a constitutional violation, Heap can't be liable for supervising one, ratifying one, or for failing to train his deputies to avoid one. *See Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005).

## B.

As for the state claims, Smith sues Heap for defamation and IIED. We must decide whether state law protects Heap from those claims, and it does.

Heap claims two statutory immunities. Both live in § 101.106 of the Texas Civil Practice and Remedies Code, and both preclude Smith's tort claims.

*First*, under subsection (a) of that statute, filing a tort claim "against a governmental unit . . . immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter."[11]

*Second*, subsection (f) entitles a governmental employee to dismissal of an individual-capacity suit against him when two conditions are met: *One*, the suit is "based on conduct within the general scope of that employee's employment." Tex. Civ. Prac. & Rem. Code § 101.106(f). *Two*, the suit "could have been brought" against the governmental unit. *Id.*[12]

---

when the actor "uses or exhibits a deadly weapon," *id.* § 22.02(a)(2), and a *first-degree* felony if "committed by a public servant acting under color of [his] office or employment," *id.* § 22.02(b)(2)(A).

[11] Tex. Civ. Prac. & Rem. Code § 101.106(a); *see also Molina v. Alvarado*, 463 S.W.3d 867, 870–71 (Tex. 2015) (per curiam) (applying § 101.106(a)).

[12] *See also Alexander v. Walker*, 435 S.W.3d 789, 792 (Tex. 2014) (per curiam) (applying § 101.106(f)).

Subsection (a) precludes both tort claims against Heap. In his original and amended complaints, Smith lists both Heap and Harris County as defendants. He has sued those defendants "regarding the same subject matter" because he has sued Heap in his individual *and official* capacities: Under Texas law, an official-capacity suit against an employee is "a suit against his government employer." *Franka v. Velasquez*, 332 S.W.3d 367, 382 (Tex. 2011). That means the IIED and defamation claims against Heap in his official capacity are really IIED and defamation claims against the county. And those claims necessarily arise from the "same subject matter" as the identical individual-capacity claims against Heap.

Even if subsection (a) did not apply, subsection (f) would bar Smith's tort claims. "The scope-of-employment inquiry under section 101.106(f) focuses on whether the employee was doing his job, not the quality of the job performance." *Garza v. Harrison*, 574 S.W.3d 389, 394 (Tex. 2019). In other words, to claim immunity, a defendant need only link his "job responsibilities" to "the alleged tort[s]." *Id.*

That link exists here. Both tort claims against Heap arise, if at all, from acts he took to fulfill his official duties. As the elected constable, Heap supervises his deputies' activities and is the public face of his precinct. Thus, both the IIED claim, which arises from the stop, and the defamation claim, which arises from the presser, are linked to conduct within the scope of Heap's employ as a precinct constable. That means Heap has immunity. *See, e.g.*, *Alexander*, 435 S.W.3d at 792.

Smith replies that Heap is not immune under subsection (f) because he "stepped outside of his official duties" by "engag[ing] in malicious conduct." But whether an official's act is unlawful does not determine whether

11

that act is within the scope of his employment.[13]  What matters is whether the defendant's actions are linked to his job responsibilities, and that connection exists here.

* * * * *

Constable Heap is entitled to dismissal.  His immunities bar all claims against him.  We REVERSE the denial of the motion to dismiss, DISMISS all claims, and RENDER judgment for Heap.

---

[13] In *Garza*, for example, an off-duty officer shot and killed a suspected drug dealer in a parking lot.  But whether that was a tort—and a very bad one—was not the question. *Garza*, 574 S.W.3d at 405.  "Under section 101.106(f), we are not tasked with passing judgment on [the police officer's] skill or the manner in which he attempted to enforce the law," the Court stressed. *Id*.  "Our analysis is strictly limited to whether he was doing the job of a peace officer . . . ." *Id*. at 405–06.  And because Texas law permits off-duty officers to make warrantless arrests, the Court found that the officer had acted within the scope of his employment. *Id*. at 406.

Blackletter agency law confirms that result. *See, e.g.*, RESTATEMENT (SECOND) OF AGENCY § 247 (1958), Westlaw (database updated Mar. 2022) ("A master is subject to liability for defamatory statements made by a servant acting within the scope of his employment, or, as to those hearing or reading the statement, within his apparent authority."); *see also id*. § 229 (for some facts relevant to whether an act is within the scope of employment).