# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 19, 2022

Lyle W. Cayce
Clerk

No. 21-60533

John D. Rogers,

*Plaintiff—Appellant*,

*versus*

Pelicia E. Hall, *in her individual capacity*; Sean Smith, *in his individual capacity*,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 4:18-CV-257

Before Smith, Costa, and Wilson, *Circuit Judges*.

Cory T. Wilson, *Circuit Judge*:

John Rogers was fired from his position as the Chief of Investigation of the Mississippi State Penitentiary at Parchman (Parchman) about three months after he testified at a probable cause hearing on behalf of one of his investigators. Rogers sued the Mississippi Department of Corrections (MDOC), then-MDOC Commissioner Pelicia Hall, and MDOC's Corrections Investigations Division Director, Sean Smith, under 42 U.S.C. § 1983, alleging, *inter alia*, a First Amendment retaliation claim. The district

No. 21-60533

court granted summary judgment for the defendants based on sovereign and qualified immunity. We affirm.

## I.

Rogers was subpoenaed by James Bobo, who by then was a former MDOC investigator, to testify at a probable cause hearing on March 13, 2017, in Sunflower County Circuit Court. The hearing concerned a criminal assault charge brought by Parchman Superintendent Earnest Lee against Bobo. During his hearing testimony, Rogers described a keystone-cops-style chain of events that erupted during an investigation Rogers led into another alleged assault of an inmate by Parchman officers. He contends that after his hearing appearance, the MDOC brass retaliated by terminating him.

From Rogers's account, the MDOC personnel involved did not exactly cover themselves in glory. He testified that on November 21, 2016, the mother of Parchman inmate Tristan Harris informed Rogers that two Parchman staff members had assaulted Harris. Rogers dispatched two Corrections Investigation Division officers, Bobo and William Carter, to investigate. Once they were underway, one of the investigators told Rogers that there was reason to believe that the allegation was true because he found blood on Harris's clothing. Rogers then called Smith, his supervisor at MDOC's Jackson headquarters, to report the incident. After the call, Rogers entered a conference room where Bobo and Carter were interviewing Harris about the alleged assault.

After the interview, Rogers asked two Parchman corrections officers whether they knew anything about the assault. They did not, but one of them indicated that a different officer, Steven Tyler, was in the building the morning of the assault. Rogers, Bobo, and Carter then interviewed Tyler. Tyler initially denied any wrongdoing, but Rogers noticed blood stains on his pants and boots. Bobo and Carter took pictures of the stains. Rogers left the

No. 21-60533

conference room to call Smith again with an update, leaving Bobo and Carter alone in the room with Tyler.

As he ended his call with Smith, Rogers heard a commotion in the conference room. As Rogers entered the room, he saw Bobo and Carter in a physical altercation with Tyler. Bobo told Rogers that Tyler had assaulted them, they attempted to arrest him, and he was resisting. Rogers helped handcuff Tyler, who eventually recanted his statement denying knowledge of the assault and turned over his bloodied clothes and boots to the investigators.

At that point, Lee burst into the conference room, grabbed Tyler, and told Rogers and the investigators that Lee and Tyler were leaving. Rogers replied that Tyler was a suspect in a criminal investigation, he was not permitted to leave, and Lee was interfering in a lawful investigation. Stalemated, both Rogers and Lee left the room to call their respective supervisors—Rogers's third call to Smith that day.[1] Lee re-entered the conference room while Rogers was still in the hallway on the phone with Smith. Shortly after, Rogers heard another ruckus coming from the room. Though Rogers did not testify about it during the probable cause hearing, this latest altercation was between Lee and Bobo, giving rise to Lee's assault charge against Bobo.[2]

---

[1] Lee's supervisor was Jerry Williams, the Parchman Deputy Commissioner. As noted, Rogers's supervisor was Smith, whose supervisor was the MDOC Commissioner, who in November 2016 was Marshall Fisher. Hall replaced Fisher as MDOC Commissioner in February 2017.

[2] During a subsequent hearing before the Mississippi Employees Appeal Board (MEAB) challenging his termination, Rogers testified that in his third call with Smith, he had requested permission to call Fisher and ask the MDOC Commissioner to instruct Lee to "stand down." Smith agreed, and during their call, Fisher told Rogers to collect Tyler's clothing but allow Tyler to leave with Lee. While Rogers was still on his call with Fisher, Carter exited the interview room and told Rogers that Lee had slapped Bobo. Rogers

No. 21-60533

Sometime after Hall became the new MDOC Commissioner in February 2017, Rogers allegedly learned that Hall was going to "bury" the investigation into Harris's assault. Rogers then contacted Agent Walter Henry with the Federal Bureau of Investigation (FBI) about what Rogers saw as a cover-up of the Harris assault; he forwarded copies of documents related to his internal investigation to Henry by email on March 10, 2017, just three days before he testified at Bobo's probable cause hearing.

Carter later relayed to Rogers that Hall was "very upset" that Rogers forwarded details of the Harris investigation to the FBI.[3] In May or June 2017, Smith called Rogers at Hall's behest and asked for a synopsis of Rogers's communications with the FBI. Rogers told Henry, and Henry responded directly to Smith and Hall. On June 5, 2017, Smith again contacted Rogers and requested another synopsis of Rogers's communications with the FBI. This time, Rogers complied himself.

Rogers was fired on June 23, 2017. Smith and Hall signed his employment termination paperwork. At the time, MDOC did not provide a reason for his termination. In a declaration provided three years later in support of the defendants' motion for summary judgment in this action, Hall stated that Rogers was fired for "his continued inability to get along with [Parchman] staff."

Rogers appealed his termination to the MEAB, alleging that his termination was in retaliation for reporting the Harris assault to the FBI. After a hearing, the MEAB agreed that it was. On September 28, 2018, the

---

testified that when he told Fisher what Carter had said, Fisher responded by convening a meeting in Jackson the next day to resolve the dispute. Rogers's MEAB testimony is not at issue in this appeal.

[3] Carter testified to these facts during Rogers's MEAB hearing.

No. 21-60533

MEAB reversed Rogers's termination and, among other relief, directed MDOC to reinstate him to his position. Rogers declined reinstatement, however.

Instead, in December 2018, Rogers filed a complaint in the Northern District of Mississippi against Hall and Smith alleging a First Amendment retaliation claim in violation of 42 U.S.C. § 1983 and seeking money damages.[4] Rogers alleged that Hall and Smith violated his First Amendment rights by "retaliating against him based on his speech on a matter of public concern," i.e., for his testimony at Bobo's probable cause hearing.[5] He also alleged that his termination "violate[d] clearly established law of which a reasonable public official would be aware."

After discovery, the defendants moved for summary judgment based on qualified immunity. They contended that Rogers could not show that the defendants violated a clearly established right or that Rogers's speech, i.e., his hearing testimony, was "the substantial or motivating factor in his termination." In response, Rogers asserted that his testimony fell squarely within the rule announced in *Lane v. Franks*, 573 U.S. 228 (2014), such that it was protected First Amendment speech.

---

[4] Rogers also alleged a state law claim for violation of public policy against MDOC under the Mississippi Tort Claims Act. *See* Miss. Code Ann. § 11-4-1, *et seq.*; *see also id.* § 25-9-171(j) (defining "whistleblower" as "an employee who in good faith reports an alleged improper governmental action to a state investigative body, initiating an investigation"). The district court granted summary judgment on this claim for MDOC based on Eleventh Amendment sovereign immunity. Rogers does not challenge the district court's ruling on appeal.

[5] Initially, Rogers alleged that his communications with the FBI also constituted protected speech. But after the defendants moved for summary judgment, Rogers conceded that the only basis for his First Amendment claim was his testimony at Bobo's probable cause hearing.

The district court granted the defendants' motion for summary judgment. The court distinguished *Lane*. First, the court contrasted the plaintiff in *Lane*, who was compelled by subpoena to testify during the criminal trial of a subordinate he fired, with Rogers, who the district court found (incorrectly) had not been compelled to testify by subpoena. *See* 573 U.S. at 233, 235, 238. Next, the court determined that Rogers had failed to show that testifying in court proceedings was outside his "ordinary job responsibilities," as was undisputed in *Lane*. *See id.* at 238 n.4. Instead, the district court concluded that "[i]t is axiomatic that a law enforcement officer's job duties ordinarily include testifying in court regarding matters learned or observed during an investigation, as Rogers did in this instance." Thus, the district court held that Rogers failed to establish that the defendants' conduct violated clearly established law, and therefore failed to rebut the defendants' qualified immunity defense to his claim. Rogers timely appealed.

## II.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In a qualified immunity case, however, the usual summary judgment burden of proof is altered. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "Once an official pleads the [qualified immunity] defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id.* We review a "grant of summary judgment de novo, applying the same standard as the district court." *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020) (citing *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 328 (5th Cir. 2017)).

## III.

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "When a defendant asserts and is entitled to [qualified immunity], a court has two options:  It can decide that the plaintiff's constitutional claims lack merit, or it can decide that the defendant's conduct did not violate clearly established law." *Smith v. Heap*, 31 F.4th 905, 911 (5th Cir. 2022).  We have "sound discretion" to address either prong first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Heap*, 31 F.4th at 911.

As the district court did, we begin—and conclude—our analysis by addressing whether the defendants' conduct violated clearly established law. It did not.

A defendant does not violate "a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014).  This means that "'existing precedent . . . placed the statutory or constitutional question' confronted by the official 'beyond debate.'" *Id.* at 779 (quoting *al-Kidd*, 563 U.S. at 741). In other words, the plaintiff must "point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (en banc) (citations and internal quotation marks omitted).  It is thus Rogers's "burden to point out the clearly established law." *Clarkston v. White*, 943 F.3d 988, 993 (5th Cir. 2019).

Rogers contends that *Lane* "clearly established" that his testimony at Bobo's probable cause hearing was protected speech. *Lane* involved an administrator of a state program who reported an employee (also an Alabama legislator) for collecting pay for hours the legislator had not worked. *Lane*, 573 U.S. at 232; *see also Gibson v. Kilpatrick*, 773 F.3d 661, 667 (5th Cir. 2014) (discussing *Lane*). Lane instructed the employee to work the hours she promised to work, and when she refused, he fired her. *Lane*, 573 U.S. at 232. After the FBI began an investigation into the matter, Lane was compelled by subpoena to testify before a federal grand jury; he complied and described the events leading to the legislator's termination. *Id.* at 232–33. Shortly thereafter, Lane was fired. *Id.* at 233. He then brought a First Amendment retaliation claim against his former employer. *Id.* at 234. The Supreme Court ultimately held that "the First Amendment protects a public employee who provides truthful sworn testimony, compelled by subpoena, outside the scope of his ordinary job responsibilities." *Id.* at 238. Notably, the Court clarified that

> [i]t [was] undisputed that Lane's ordinary job responsibilities did not include testifying in court proceedings. For that reason, Lane asked the Court to decide only whether truthful sworn testimony that is not a part of an employee's ordinary job responsibilities is citizen speech on a matter of public concern. We accordingly need not address in this case whether truthful sworn testimony would constitute citizen speech under *Garcetti* [*v. Ceballos*, 547 U.S. 410 (2006),] when given as a part of a public employee's ordinary job duties, and express no opinion on the matter today.

*Id.* at 238 n.4 (citations omitted).

In several respects, Rogers's case comes close to *Lane*: He gave sworn testimony, compelled by a subpoena,[6] in court proceedings on a matter of public concern. But "close" does not count in the qualified immunity calculus. Arguably, Rogers's case fits squarely within the scenario *Lane* left open for another day, assuming as the district court found that giving sworn testimony about matters Rogers observed during an investigation he led fell within Rogers's "ordinary job duties" as a public law enforcement officer— indeed, as the Chief of Investigation at Parchman. *See id.*; *see also Morrow v. Dillard*, 412 F. Supp. 494, 500 (S.D. Miss. 1976) (recognizing that a "general law enforcement dut[y]" is "testifying in court"), *reversed in part on other grounds*, 580 F.2d 1284 (5th Cir. 1978). Just as arguably, as ably discussed by Judge Costa in his dissent, Rogers's testimony may well have fallen outside his normal work duties in this instance because the subject of Rogers's testimony—the altercation between Lee and Bobo—was somewhat tangential to the main investigation. Moreover, Rogers was not testifying on behalf of MDOC at the probable cause hearing—he was subpoenaed by *Bobo* and testified *unfavorably to various MDOC personnel*.

Therein lies the rub: To defeat qualified immunity, Rogers must show that the defendants violated a right that was not just arguable, but "beyond debate." *Plumhoff*, 572 U.S. at 779 (quoting *al-Kidd*, 563 U.S. at 741). And he fails to "point to controlling authority—or a robust consensus of persuasive authority," *Morgan*, 659 F.3d at 371–72, that either answers the

---

[6] Rogers is correct that the district court erred in concluding that there was no evidence in the record that he was compelled to testify by a subpoena—the defendants conceded this fact in their Answer. But this error is not dispositive because, regardless of whether his testimony was compelled by subpoena, Rogers fails to offer precedent to support that his testimony was protected speech. *Cf. Lane*, 573 U.S. at 238 n.4. (addressing "only whether truthful sworn testimony that is not a part of an employee's ordinary job responsibilities is citizen speech on a matter of public concern").

No. 21-60533

question *Lane* left open regarding sworn testimony given by a public employee *within* his ordinary job duties, or clearly establishes that Rogers's testimony was outside his ordinary job duties as a law enforcement officer (or was otherwise protected speech). Nor does Rogers point to record evidence demonstrating that his testimony was undisputedly outside the scope of his ordinary job responsibilities, as was his burden to do. *Cf. Lane*, 573 U.S. at 238 n.4. As a result, he fails to show a violation of any "right [that] was 'clearly established' at the time of the challenged conduct," *al-Kidd*, 563 U.S. at 735 (quoting *Harlow*, 457 U.S. at 818), and he therefore cannot overcome the defendants' assertion of qualified immunity.

AFFIRMED.

No. 21-60533

Gregg Costa, *Circuit Judge*, dissenting:

Do police officers have the same First Amendment rights that other public employees enjoy? That is the decisive question in this appeal. Because those serving in law enforcement do not lose their freedom of speech when they testify as citizens, I would reverse.

Public employees who testify outside the scope of their ordinary job duties are entitled to First Amendment protection, even if they testify about matters they learned at work. *Lane v. Franks*, 573 U.S. 228, 238 (2014). The First Amendment thus protected the plaintiff in *Lane*, a community college director who testified about on-the-job happenings but not pursuant to any job duty. *Id.* at 231–33, 238 & n.4, 243.

The harder issue is whether that same protection applies when employees do testify as part of their job duties. That is the question the Supreme Court left open in *Lane*. 573 U.S. at 238 n.4. Think of a homicide detective testifying in a murder case. Or a police officer who pulled over a driver testifying at that driver's DUI trial. In those cases, the officer's testimony is part of the job. It is expected that officers will be called by the prosecution to testify in cases the officer investigated. While some courts have concluded that this testimony also is protected citizen speech, *see Reilly v. Atlantic City*, 532 F.3d 216, 231 (3d Cir. 2008), we have not yet addressed whether constitutional protection extends to public employees' testifying as part of their job duties.

We need not decide that difficult issue here.[1] Rogers's speech fits in the *Lane* box. Taking the allegations in the light most favorable to Rogers as

---

[1] Because we have not answered the question *Lane* reserved, qualified immunity would provide a defense to any speech claim based on testimony that was a part of Rogers's job duties. The law cannot be clearly established when the law is unsettled.

No. 21-60533

we must at this stage,[2] he was not testifying as part of his job duties. Rogers was subpoenaed to testify by the *defense*, not the prosecution. *See Lane*, 573 U.S. at 247 (Thomas, J., concurring) (finding it significant that Lane was not subpoenaed by his employer). If Rogers had not shown up to testify, he might have been held in contempt of court, but he would not have been defying a work expectation. *Contrast Garcetti v. Ceballos*, 547 U.S. 410, 422–24 (2006) (explaining that employee's speech was a task he "was paid to perform" and thus unprotected). Rogers's testimony focused not on his investigation into Tyler but on the alleged assault he witnessed between his coworkers, which he had no duty to investigate.[3] *Cf. Howell v. Town of Ball*, 827 F.3d 515, 524 (5th Cir. 2016) (holding that it was not part of an officer's job duties to help investigate coworkers' fraud). And the focus of his testimony made sense: Bobo, not Tyler, was the defendant in the probable cause hearing.

Rogers's testimony thus was "nothing like the routine testimony of law-enforcement agents in support of criminal prosecutions." *Seifert v. Unified Gov't of Wyandotte Cnty./Kansas City*, 779 F.3d 1141, 1152 (10th Cir. 2015). Testifying as an investigator would have looked much like the earlier

---

[2] In upholding the qualified immunity dismissal, the majority opinion states that Rogers does not "point to record evidence demonstrating that his testimony was *indisputably* outside the scope of his ordinary job responsibilities." Maj. Op. 10 (emphasis added). But a plaintiff seeking to overcome qualified immunity need not eliminate factual disputes. The usual summary judgment standard governs, with the plaintiff entitled to have all factual disputes and inferences resolved in his favor. *See, e.g., Tolan v. Cotton*, 572 U.S. 650, 657 (2014). After giving the plaintiff the benefit on any factual disputes, the question becomes whether those facts show a violation of clearly established law. *Id.* (finding a clearly established violation of excessive-force law after construing numerous factual disputes in the plaintiff's favor).

[3] Rogers testified about the investigation into Tyler's assault only to provide context for why Lee was in the room with Bobo. *Cf. Bevill v. Fletcher*, 26 F.4th 270, 276–77 (5th Cir. 2022) (holding that speech was made as citizen when officer mentioned his job title only for context and not as part of his duties). Once that foundation was laid, the testimony focused on the verbal and physical altercation between Lee and Bobo.

examples.  Rogers would have been called by the state—his employer—to testify about his investigation into Tyler's alleged assault of an inmate.  His testimony would have centered around *that* assault, the one his job duties obligated him to investigate.  And Tyler, the subject of that investigation, would have been the defendant.  None of those things occurred here.  So while Rogers's testimony concerned his work, he was not testifying as part of his work.  *See Lane*, 573 U.S. at 239–40; *Chrzanowski v. Bianchi*, 725 F.3d 734, 740 (7th Cir. 2013) ("[A]ppearing as an 'investigating witness' is a far cry from giving eyewitness testimony under subpoena regarding potential criminal wrongdoing that [the officer] happened to observe while on the job."); *Seifert,* 779 F.3d at 1152.  As a result, the First Amendment applies.

Stepping outside *Lane*'s focus on testimony to look at the general considerations that define the citizen/employee line further supports this view.  Rogers's speech was made externally, not just up the chain-of-command.  *See Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008).  His testimony was not "subject to [his] employer's control"—after all, he testified for the defendant.  *See Anderson v. Valdez*, 845 F.3d 580, 596 (5th Cir. 2016); *see also Bevill*, 26 F.4th at 278.  And Rogers's testimony can be likened to that of any bystander who witnessed the assault and was called to testify.  *See Anderson*, 845 F.3d at 594 ("[W]hen there is an analogue to speech by citizens who are not public employees, the employee . . . [speaks] as a citizen." (emphasis omitted)).

It also could have been a different employee who witnessed Bobo and Lee's quarrel.  If the prison's cook was the one who saw the altercation from the cafeteria and was subpoenaed by Bobo's counsel to testify, would anyone dispute that he was testifying as a citizen?  It should make no difference that the witness in this case was a law enforcement officer.  A rule that any time an officer testifies about work-related incidents he does so as part of his job

duties would give officers less First Amendment protection than other public employees.

That is not the law. Law enforcement officers "are not relegated to a watered-down version of constitutional rights." *Garrity v. New Jersey*, 385 U.S. 493, 500 (1967). None of the public employee speech cases set special rules for the police. The dividing line—for all public employees—is between speech as a citizen and speech as an employee. *See Garcetti*, 547 U.S. at 418–19. When the speech is testimony, the distinction is between testimony provided in the course of one's job duties (an open question whether that is citizen speech) and testimony that is not (protected speech per the Supreme Court). *See Lane*, 573 U.S. at 238 & n.4.

As a factual matter, police officers will more often testify as part of their job than most other public employees. But that does not mean that *every* time they testify, they do so as part of their job duties. *See Morales v. Jones*, 494 F.3d 590, 598 (7th Cir. 2007) (testifying at a deposition in a civil suit was "unquestionably not one of [officer] Morales' job duties"). The legal test is the same. As with any public employee, courts must look at the context and content of the officer's testimony and compare that to their day-to-day job duties. Sometimes the testimony will fall within what the officer is paid to do, sometimes it will not. *Compare Green v. Barrett*, 226 F. App'x 883, 886 (11th Cir. 2007) (testimony within scope of job duties when officer testified "because she was the Chief Jailer . . . responsible for the conditions at the jail"), *with Bevill*, 26 F.4th at 276 (sworn affidavit was not within scope of officer's job duties because he submitted it as a friend of the defendant).

Consider other scenarios in which an officer would not be testifying as part of investigative duties. An officer is a witness to alleged sexual harassment in the workplace and testifies in the resulting Title VII case. An officer testifies in a coworker's divorce case about whether the colleague has

a substance abuse problem.  An officer testifies as an alibi for a colleague charged with a crime.  In all of these examples, the officer is testifying about matters observed on the job.  But in none is the officer testifying as a prosecution witness in a case the officer investigated.  And in all of them it could just as easily be a city sanitation worker who is testifying.  The sanitation worker's testimony is protected speech.  So is the police officer's.

Law enforcement's equal footing with other public employees when it comes to speech makes this a straightforward application of *Lane*.  Indeed, several courts have recognized that *Lane* applies to police officers.  *See Seifert*, 779 F.3d at 1152; *Chrzanowski*, 725 F.3d at 740; *see also Howell*, 827 F.3d at 523–24 (applying *Lane* and concluding that officer's statements were outside his normal job duties).  No case holds otherwise.  Consequently, both controlling authority—*Lane* from the Supreme Court—and a robust consensus of lower-court authority applying *Lane* to police officers establish that Rogers engaged in protected speech because his testimony was not undertaken as part of his ordinary duties.  *See Lane*, 573 U.S. at 238 & n.4.

Rogers's testimony demonstrates why the Constitution protects public employees when they speak as citizens about what they observed on the job.  Such speech "holds special value precisely because those employees gain knowledge of matters of public concern through their employment." *Lane*, 573 U.S. at 240.  Public employees are the ones most likely to know about the government's inner workings, and they should be able to speak truthfully without fear of retaliation when they see something wrong.  *Id.*  In *Lane*, that was a public corruption scandal.  *Id.* at 241.  In *Pickering*, it was the mishandling of school funds.  *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 572 (1968).  In this case, it is an alleged assault after a prison official tried to cover up a jailer's attack on an inmate.

No. 21-60533

The Supreme Court has not said whether the First Amendment protects the detective who testifies for the prosecution about his investigation. But it has answered the question for officers like Rogers who learn things on the job and testify about those facts outside of their ordinary job duties. Such testimony is citizen speech, so Rogers has a retaliation claim for the consequences of his whistleblowing.