# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 30, 2024

Lyle W. Cayce
Clerk

No. 23-50703

Ethel "Laverne" McVae, *Individually, and on Behalf of* the Estate of Marcus McVae, *Deceased*; Wiley West, *Individually, and on Behalf of* the Estate of Marcus McVae, *Deceased*,

> *Plaintiffs—Appellants*,

*versus*

Jesse Perez,

> *Defendant—Appellee*.

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:21-CV-366

---

Before Jones, Willett, and Engelhardt, *Circuit Judges*.
Kurt D. Engelhardt, *Circuit Judge*:

Marcus McVae was pulled over for a traffic violation, gave the officer a fake identity, fled on foot, and was undeterred by the officer's taser. Once the officer caught up to him, a physical altercation ensued. McVae broke free from the altercation and threw a rock at the officer before attempting to flee again. The officer then fatally shot him. McVae's parents sued the officer under 42 U.S.C. § 1983, alleging that he used excessive force in violation of

No. 23-50703

McVae's Fourth Amendment right to be free from unreasonable seizure. The district court granted summary judgment for the officer. We AFFIRM.

## I.

## A.

Texas State Trooper Jesse Perez was patrolling Interstate 10 in Kendall County, Texas on April 11, 2019, when he pulled over a white sedan for following another vehicle too closely.[1] Trooper Perez advised the driver of the reason for the stop and asked for his license. Upon noticing that the vehicle was a rental car, he asked for the rental car agreement too. The driver seemingly searched for the documents in his car and pockets without success, prompting Trooper Perez to ask him to step out of the car. The driver exited the car and informed Trooper Perez that he did not have his license on him.

While we now know that this driver was Marcus McVae, Trooper Perez was unaware of his identity at the time. Instead, McVae told Trooper Perez that his name was Montrea McCullough, that he was born on June 1, 1991, and that he could not remember his social security number or driver's license number. Trooper Perez asked both McVae and his passenger several questions over approximately ten minutes before returning to his patrol car to look up "Montrea McCullough." Apparently having difficulties locating a "Montrea McCullough" in the system, Trooper Perez asked his age. McVae responded "twenty-six," despite that the birthday he gave made him almost twenty-eight. When questioned further, McVae confirmed that Trooper Perez had his correct birthday and the correct spelling of his name, but he eventually admitted that he is not a licensed driver.

---

[1] Trooper Perez's body camera recorded the events that follow.

After receiving McVae's consent, Trooper Perez patted him down and removed a vape pen from his pocket. He then gave McVae one last opportunity to honestly identify himself. When McVae again failed to identify himself, Trooper Perez consensually searched his pockets, instructed him to put his hands behind his back, and informed him that he was being detained until his identity could be determined. As Trooper Perez attempted to handcuff him, McVae broke free and sprinted across the interstate. Trooper Perez immediately jumped in his patrol car and drove momentarily before exiting the vehicle to chase McVae on foot. He followed McVae into a wooded area and across a shallow creek while yelling, "Get on the ground!" and "I'm going to shoot you!" before deploying his taser. It is unclear whether the taser made contact with McVae, who continued to run undeterred.

McVae eventually tripped, allowing Trooper Perez to catch up to him. Trooper Perez continued yelling at McVae to get on the ground while tasing him. McVae, still apparently unphased by the taser, struck Trooper Perez, and a physical altercation on the ground ensued. During this altercation—which left Trooper Perez with a broken finger—an out-of-breath Trooper Perez repeatedly yelled at McVae to put his hands behind his back. McVae refused to comply and fought back, even after Trooper Perez repeatedly struck him with his fists and baton. McVae eventually managed to break free from Trooper Perez's grasp and stood up facing Trooper Perez, next to several rocks. Trooper Perez then moved so his body camera no longer captured McVae, right as a rock at least the size of a softball whirled past him from McVae's direction. Trooper Perez then immediately fired his gun four times, all within less than 2.5 seconds of when the rock passed him. He ceased shooting when he saw McVae fall into a creek.

An autopsy revealed that three of the shots hit McVae, all from behind. Two of the shots were fatal. Trooper Perez testified that he

unholstered his gun when he saw McVae reach for a rock, and that he decided to fire the gun when he saw McVae throw the rock at his head.

## B.

McVae's parents, Plaintiffs-Appellants Ethel McVae and Wiley West, sued Trooper Perez under 42 U.S.C. § 1983, alleging that he used excessive force in violation of McVae's Fourth Amendment right to be free from unreasonable seizure. Trooper Perez sought summary judgment on the basis that he is entitled qualified immunity. Relying on Trooper Perez's body camera footage, the district court granted his motion for summary judgment. Plaintiffs appeal that decision.

## II.

## A.

We review orders granting summary judgment *de novo*. *In re La. Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017). Summary judgment is typically proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A defendant's "good-faith assertion" of qualified immunity in a motion for summary judgment shifts this burden, however. *Ratliff v. Aransas County*, 948 F.3d 281, 287 (5th Cir. 2020). To survive summary judgment, the plaintiff must then present evidence demonstrating that the defense does not apply. *Id.* There is no genuine dispute if a reasonable jury could not return a verdict for the plaintiff. *Roger Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).[2]

---

[2] This court has two different published opinions titled *Poole v. City of Shreveport*. *See Poole v. City of Shreveport*, 691 F.3d 624 (5th Cir. 2012); *Poole v. City of Shreveport*, 13 F.4th 420 (5th Cir. 2021). While the cases are not related and involve different plaintiffs, both are summary-judgment-stage excessive-force cases involving traffic stops. We

We review summary judgment evidence in the light most favorable to the nonmoving party. *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011). But when video footage captures the incident at issue, we rely on the facts depicted in the footage. *Id.* (citing *Scott v. Harris*, 550 U.S. 372, 381 (2007)).

B.

The only contested material fact is whether McVae threw the rock that flew past Trooper Perez. The record contains two relevant pieces of evidence: Trooper Perez's testimony that McVae threw the rock at him, and the body camera footage, which verifies Trooper Perez's testimony.

While the body camera footage does not show McVae throwing the rock, the rock came from his direction while he was standing near several rocks and facing Trooper Perez. It is undisputed that only Trooper Perez and McVae were present, eliminating anyone else. And given the size of the rock, and the speed and angle at which it flew past Trooper Perez, no reasonable jury could conclude that the rock was inadvertently kicked. Plaintiffs do not provide any other explanation for the source of the rock. Because McVae is deceased and there were no other witnesses, the body camera footage and Trooper Perez's testimony that McVae threw the rock are the only evidence that would be presented at trial.

Simply because the footage does not show McVae throwing the rock does not necessarily create a genuine dispute. Reviewing the evidence in the light most favorable to Plaintiffs, as we must for summary judgment, no reasonable jury could conclude that McVae did not throw the rock at Trooper

_____

reference both in this opinion, as did both parties in their respective briefs. To avoid confusion, we cite these opinions as *Roger Poole v. City of Shreveport* and *Janice Poole v. City of Shreveport*.

Perez. *Cf. Janice Poole v. City of Shreveport*, 13 F.4th 420, 424 (5th Cir. 2021) (finding a genuine dispute of material fact because a jury could find an officer's testimony that he did not know that the suspect's hands were empty inconsistent with dashcam footage that showed the suspect's empty hands).

## III.

### A.

Having determined that McVae threw the rock at Trooper Perez, we proceed to whether Trooper Perez is entitled qualified immunity. Qualified immunity shields government officials from civil liability if they could have reasonably believed that their actions were legal. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotation marks and citation omitted). A two-prong inquiry determines whether qualified immunity applies. The first prong asks whether the facts show that the official's conduct violated a statutory or constitutional right. *Ratliff*, 948 F.3d at 287 (citing *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014)). The second prong asks whether that right was "clearly established" at the time of the violation. *Id.* (citing *Tolan*, 572 U.S. at 656). If the answer to either prong is "no," qualified immunity applies.

### B.

We start with whether Plaintiffs have established that Trooper Perez violated one of McVae's constitutional rights. Plaintiffs allege that by shooting McVae from behind, Trooper Perez used excessive force in violation of McVae's Fourth Amendment right to be free from unreasonable seizure because McVae was an unarmed fleeing person who did not pose an imminent threat of death or serious physical injury.

An officer has the right to arrest a person who he has probable cause to believe committed a crime. *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). This right to make an arrest necessarily includes the right to use some degree of physical coercion or threat to effectuate the arrest. *Graham v. Connor*, 490 U.S. 386, 396 (1989). An officer's use of *excessive* force, however, implicates the suspect's Fourth Amendment right to be free from unreasonable seizure. *Id.* To establish an excessive force claim, a plaintiff must prove "(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Jackson v. Gautreaux*, 3 F.4th 182, 186 (5th Cir. 2021) (citation omitted). Because Trooper Perez used deadly force, injury and causation are established, leaving only the "excessive" and "reasonableness" elements. *See Harmon v. City of Arlington*, 16 F.4th 1159, 1163 (5th Cir. 2021).

To determine whether the force used on a suspect was excessive, we consider the three *Graham* factors: (1) the severity of the suspected crime; (2) whether the suspect posed an immediate threat to the safety of the officer or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Id.* (citing *Graham*, 490 U.S. at 396). When an excessive force claim involves deadly force, the threat-of-harm factor "typically predominates," *id.*, and the excessive and reasonableness elements become two sides of the same coin: "An officer's use of deadly force is not excessive, and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm to the officer or to others," *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009).

Reasonableness is an objective standard, and we must judge an officer's conduct "in light of the circumstances confronting him, without the benefit of hindsight." *Id.* We must take heed to not define the relevant moment too narrowly but rather "consider all of the circumstances leading

up to that moment, because they inform the reasonableness of [the officer's] decisionmaking." *Mendez v. Poitevent*, 823 F.3d 326, 333 (5th Cir. 2016). "The calculus of reasonableness" must also "embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.

"Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Garner*, 471 U.S. at 11–12. "[I]f the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given." *Id.*

That is precisely what happened here. While the events leading to McVae's death started with a simple traffic violation, things quickly escalated. Once McVae threw the rock at Trooper Perez, the crime at issue was much more severe: aggravated assault of a public servant, a first-degree felony that includes threatening an officer with a weapon and serious physical harm.[3] *See* Tex. Penal Code § 22.02(b)(2)(B). Trooper Perez had

---

[3] Intentionally or knowingly threatening a public servant with imminent bodily injury using a deadly weapon while the public servant is lawfully discharging an official duty constitutes aggravated assault of a public servant. *See* Tex. Penal Code §§ 22.01(a)(2), 22.02(a)–(b)(2)(B). "Deadly weapon" as used in the Texas Penal Code means "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code § 1.07(a)(17)(B). This definition is "exceedingly broad." *Prichard v. State*, 533 S.W.3d 315, 320 (Tex. Crim. App. 2017). "[T]here is no limitation as to what type of thing may be considered a deadly weapon." *Id.* The rock that McVae threw is covered by this definition of "deadly weapon."

already warned McVae that he was "going to shoot [him]," and had attempted to subdue him using a taser, a baton, and physical force. But McVae "proved to be a dangerous opponent," and these escalating attempts failed. *See Mendez*, 823 F.3d at 332. When McVae threw the rock, Trooper Perez had to make an immediate reflexive decision of how to protect himself in a rapidly evolving situation against an increasingly violent individual who had repeatedly resisted lesser forms of force. *See id.*; *Graham*, 490 U.S. at 396–97. Plaintiffs' use of several frame-by-frame screenshots from the body camera footage to dissect events that occurred in less than 2.5 seconds is the "sort of Monday morning quarterbacking" that our precedent proscribes. *See Harmon*, 16 F.4th at 1165.

A reasonable officer could have believed that McVae posed a threat of serious harm even if he was running away and unarmed in the exact moment that Trooper Perez shot him. Plaintiffs' reliance on *Lytle v. Bexar County*, *Baker v. Coburn*, and *Janice Poole v. City of Shreveport* to conclude otherwise is misplaced. *Lytle* and *Baker* are both in a line of cases involving officers who shot at fleeing cars in response to purported threats of a driver intentionally driving into the officer. *See Lytle v. Bexar County*, 560 F.3d 404, 412 (5th Cir. 2009); *Baker v. Coburn*, 68 F.4th 240, 249 (2023). Excessive force cases "addressing suspects *fleeing in motor vehicles* often focus on the position of the officer relative to the vehicle." *Hathaway v. Bazany*, 507 F.3d 312, 321 (5th Cir. 2007) (emphasis added). This makes sense; a car that has driven a sufficient distance away from an officer no longer poses a threat of intentionally driving into the officer. These cases are not applicable here, however. As McVae—who was an unarmed fleeing suspect immediately before he picked up and hurled a rock at Trooper Perez—demonstrated, a threat does not necessarily cease when a violent suspect attempts to flee. *See Garner*, 471 U.S. at 10–12.

That McVae's weapon of choice was freely available to him in nature also demonstrates why this case is not analogous to *Janice Poole*. There, this court stated: "If a jury views the disputed facts in favor of the plaintiff—concluding that [the officer] shot Poole, without warning, seeing that he was empty-handed and turning away from the officer—then [the officer] violated Poole's clearly established right to be free from unreasonable seizure." *Janice Poole*, 13 F.4th at 426. In contrast, that McVae could have picked up another rock at any time makes this case more akin to "furtive gesture" cases "in which the officer could reasonably fear that the suspect was about to pull a gun from a waistband or other hidden location." *Id.* at 425 (collecting cases).

By arguing that the threat had ceased because McVae was running away unarmed in the moment Trooper Perez shot him, Plaintiffs define the issue much too narrowly. *See Mendez*, 823 F.3d at 333. Trooper Perez was not obligated to give McVae a second chance.

\* \* \*

Given the events that preceded the shooting, a reasonable officer in Trooper Perez's shoes could have believed that McVae posed a threat of serious harm. Trooper Perez's use of deadly force was therefore reasonable and not excessive, and did not violate McVae's constitutional right to be free from unreasonable seizure. Trooper Perez is entitled qualified immunity.

The district court's judgment is AFFIRMED.